387 So.2d 570 (1980)
STATE of Louisiana
v.
Harry DeKAY, Jr. and Robert Pitard.
No. 66367.
Supreme Court of Louisiana.
June 23, 1980.
Rehearing Denied September 12, 1980.[*]
*571 Willim J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
Garon, Brener & McNeely, Milton E. Brener, New Orleans, James A. McPherson, New Orleans, for Robert Pitard, defendant-appellant.
Carol B. Hart, New Orleans, for Harry DeKay, defendant-appellant.
DIXON, Chief Justice.
Defendants, Harry DeKay, Jr. and Robert Pitard, were convicted of public bribery and conspiracy to commit public bribery. R.S. 14:118 and R.S. 14:26. Given two year sentences for each offense, suspended, defendants were placed on probation for five years. On appeal, they rely on four arguments. A review of the record discloses no merit in defendants' arguments, and their convictions and sentences are therefore affirmed.
On April 16, 1978 defendant DeKay, who was head of Prytania Private School in New Orleans, was arrested in Waveland, Mississippi for engaging in crimes against nature against R.S. At that time, the Orleans Parish District Attorney's Office began to investigate DeKay in connection with other alleged crimes against nature. The investigation revealed that DeKay had allegedly committed sex offenses with J.K. and J. and T.D. in Waveland, and also with R.S. in New Orleans.
*572 DeKay employed Pitard as his attorney; Pitard, with the assistance of two women, contacted the families of the boys involved and offered to "settle the case." On November 5, 1978 Mrs. D., the mother of two of the victims, accepted $5000 from Pitard in return for which she signed an affidavit which provided:
"I, T.D., acting individually and through my parent, C.D., court appointed Tutrix, hereby release Harry B. DeKay, Jr. and Prytania Private School from any responsibility or liability concerning any alleged actions of impropriety that were alleged to have happened during the year 1978. I also admit that any statements that I may have made regarding actions of impropriety by Harry B. DeKay, Jr. were false and misleading, and that Harry B. DeKay, Jr. is guilty of no wrongdoing to me whatsoever. This release is made for the sum of Five Thousand ($5000.00) Dollars"
On November 8, 1978 a bill of information was filed against DeKay charging him with two counts of crime against nature with R.S. Subsequently, defendants DeKay and Pitard were charged with public bribery and conspiracy to commit public bribery in that they offered to give, and did give, the sum of $5000 to C. and T.D., persons about to be called as witnesses, with the intent to influence their conduct as witnesses in criminal proceedings before the Orleans Parish Grand Jury and at the trial of DeKay.

Argument No. 1
In this argument defendants contend that the trial court erred in denying the motion for a directed verdict and for a new trial on the grounds that there was no evidence that T. or C.D. were about to be called as witnesses and no evidence of intent to commit public bribery.
R.S. 14:118 defines the crime of public bribery as follows:
"Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
. . . . .
(4) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony."
Defendants argue that the Ds. may have been victims, but were not witnesses because at the time the settlement agreement was entered into they had not yet been subpoenaed to testify against DeKay in the crime against nature case. The Official Reporter's Comment to R.S. 14:118 provides that the "person does not have to be actually summoned to be regarded as a witness, but need be only `about to be called as a witness.'"
The record reveals that on November 7, 1978 J.K. and Mrs. D. (in place of her son T., who was emotionally unstable), testified before the Orleans Parish Grand Jury in connection with the crimes against nature investigation of DeKay. According to the testimony of Assistant District Attorney David Jennings, at the time of Pitard's arrest on November 5, he intended to call both T.D. and J.K. as "system and intent" witnesses in the prosecution against DeKay. T.D. and Mrs. D. fell within the class of persons who were "about to be called as witnesses."
Defendants argue that Pitard did not have the requisite intent to change the testimony of the Ds. Pitard, he said, believed that he could settle the criminal charges against DeKay because he had been told by his brother-in-law an assistant district attorney in Orleans Parish, that he could enter into settlement agreements with victims, but not with witnesses. Pitard, a practicing attorney for twelve years, testified at trial that he did not realize that he was engaged in illegal conduct until the bribery statute was read to him after his arrest. At that time he realized that in criminal cases victims were often witnesses.
R.S. 14:17 provides in part: "Ignorance of the provision of this Code or of any *573 criminal statute is not a defense to any criminal prosecution." Although Pitard may not have thought that his actions were criminal, both he and DeKay clearly intended to influence the conduct of potential witnesses. As for DeKay, on November 3, he contacted Mrs. Roth, one of the go-betweens, and pleaded for her to help him because he was about to be indicted.
There was sufficient evidence of intent to support defendants' convictions.
There is no merit to this argument.

Argument No. 2
Defendants contend that the trial court erred in failing to order the state to furnish the defense with dates on which witnesses were subpoenaed to appear before the grand jury and in denying the defense motion to quash.
Counsel for Pitard filed a motion for a bill of particulars in which he requested that the state furnish the date on which C. and T.D. were summoned to testify before the grand jury. The state responded that the defense was not entitled to this information, and the district court agreed. Similarly, a motion to quash the indictment was filed on the ground that the Ds. were not persons about to be called as witnesses and the motion was denied.
Defendants claim that they were prejudiced by these rulings because if the subpoenas were not issued until after the bribes were made, the Ds. were not yet "witnesses" under the statute. The Reporter's Comment to R.S. 14:118 does not support the narrow definition adopted by the defense. According to that Comment, a person need not actually be summoned to be regarded as a witness. A "witness" not only testifies, but is one who has personal knowledge of something.
The state had, in response to a defense discovery request, informed counsel of the date on which the grand jury in question was empaneled. Defendants were sufficiently informed of the nature and the cause of the charges against them and were provided with sufficient information to properly prepare their defense. State v. Thornton, 351 So.2d (La.1977); C.Cr.P. 484.
This argument lacks merit.

Argument No. 3
Defendants complain that the trial court erred in denying defense motion for a new trial and in not allowing into evidence results of polygraph tests.
At trial the results of DeKay's polygraph tests were sought to be introduced by Pitard as evidence of Pitard's belief that he was not engaged in illegal activity at the time he agreed to act as DeKay's attorney and enter into settlement agreements with the victims, for the reason that DeKay's polygraph tests tended to confirm DeKay's innocence of the sex crimes. The state's objection that the defense was employing an indirect method of getting into the record inadmissible evidence was sustained. At the hearing on the motion for a new trial, the defense reurged the argument that the results of the polygraph tests were admissible to prove defendant Pitard's state of mind.
The evidence (of the tests) was merely cumulative. At any rate, Pitard's belief that DeKay was innocent of the crime against nature allegations is irrelevant as to whether Pitard intended to influence the conduct of witnesses by the payment of money. Therefore, the actions of the trial judge in excluding the results of the polygraph tests did not prejudice the defendant.
This argument is without merit.

Argument No. 4
Defendants argue that the trial court erred in denying defendants' motion to set aside the verdict and dismiss the prosecution.
After trial the defense filed a motion to set aside the verdict and dismiss the prosecution on the grounds that the district attorney's office should be estopped from prosecuting defendants since Pitard's brother-in-law, an assistant district attorney, advised him that one could settle with victims, but not with witnesses.
*574 At the hearing on these motions, William Wynne, Pitard's brother-in-law, testified that Pitard had presented him with a hypothetical question, asking how to get charges dropped. Wynne told him that in some cases it was proper to get the victim to sign an affidavit and arrange for restitution from the defendant; but he never advised Pitard that it was proper to pay a victim not to testify.
The equitable principle of estoppel has been recognized in criminal law only to the extent that it is the theory behind the defense of entrapment. See Perkins on Criminal Law, 2d Ed., Chapter 10, § 9, pp. 1035-1036. There is no evidence of entrapment in this case, and no reason to dismiss the prosecution or to set aside the verdict.
This argument has no merit.
For the reasons assigned, defendants' convictions and sentences are affirmed.
NOTES
[*] Marcus and Lemmon, JJ., would grant a rehearing.